[Civ. No. 4038. Third Appellate District.—October 30, 1930.]

JACK PHILLIPS, a Minor, etc., Appellant, v. LLOYD D. LYON et al., Respondents.

Lasher B. Gallagher for Appellant.

Downey & Chester, Butler, Van Dyke, Desmond & Harris, and Downey, Brand & Seymour for Respondents.

MR. JUSTICE THOMPSON (R. L.) Delivered the Opinion of the Court.—The plaintiff Jack Phillips by his guardian has appealed from that portion of a judgment which was rendered in his favor in compensation of personal injuries sustained by him in an automobile collision accident. It is contended this portion of the judgment, which is for $3,000, is grossly inadequate to compensate him for the injuries sustained.

At 8 o'clock on the morning of June 1, 1928, the plaintiff's minor son Jack, aged fifteen years, was riding as a passenger

with the defendant Clifford Woodard, Jr., in his father's Studebaker machine. They were traveling westerly on Ninth Avenue in the city of Sacramento. At the same time, Alden C. King, a young man who was employed by the firm of Lyon & Darwin, hardware merchants of the same city, was driving their Ford truck in the course of his employment northerly along Thirty-third Street. Both machines were traveling along the proper side of their respective streets. Some shade trees and dwelling-houses deprived both drivers of a clear view of the intersecting streets which they were approaching. Alden King testified he was traveling only 15 miles an hour and that he actually entered upon the intersection of these streets before he saw the Woodard car approaching. Jack Phillips and Clifford Woodard, Jr., each testified they were traveling at a rate of speed not to exceed 20 or 25 miles an hour and that he did not see the Ford truck until they reached a point 50 or 60 feet from the intersection. A collision occurred. There is a conflict of evidence as to the cause and manner of the contact of the machines. The driver of each car insists his automobile was struck on the side by the other machine. The Ford truck appears to have been shunted across the street, landing on an adjoining lawn against a dwelling-house. The Ford, however, maintained an upright position upon its wheels. King, the driver, was dazed but uninjured. The Studebaker machine shot diagonally across the street and overturned at the curbing. Jack Phillips was found beneath the wreck of the machine, unconscious and seriously injured. He was taken to the county hospital where he remained under the care of a physician for several months. He sustained a fracture of the twelfth vertebra of the spinal column. Both bones of the right forearm were shattered near the wrist. It is insisted that he is permanently injured. A suit for damages was commenced against the driver of the Ford truck and his parents. The hardware firm was made a party defendant, as were also the individual members of the copartnership. The defendants answered separately, denying the allegations of negligence with which they were charged and affirmatively asserting that the driver of the Studebaker machine was guilty of contributory negligence. The cause was tried before a jury. A verdict was rendered against each of the defendants, except L. D. Lyon and J. H. Darwin as in-

dividuals, for damages for the injuries sustained by Jack Phillips in the sum of $3,000 and for an additional sum of $1786 for expenses incurred as a result of the injuries. A judgment was entered accordingly. The plaintiff was dissatisfied with the award of damages for personal injuries and moved for a new trial, which was denied. This appeal was then perfected. The defendants have not appealed. They do not complain of the judgment.

The plaintiff contends that the award of damages is grossly inadequate to compensate his ward for the injuries sustained and that the judgment is erroneous for the reason that it was not rendered against the individual members of the copartnership which employed the driver of the Ford machine.

A serious controversy existed regarding the alleged contributory negligence of Clifford Woodard, Jr., who was driving the Studebaker car at the time of the accident. A judgment for the defendants would have found ample support in the evidence. Both boys who were riding in the Studebaker machine saw the approaching Ford truck when they were 50 or 60 feet away. A prompt application of the brakes on their part might have avoided the accident. If the nurse, who had charge of Jack Phillips while he was confined to the hospital, speaks the truth, he admitted they were running at a grossly excessive rate of speed which prevented them from avoiding the collision. She testified that he said regarding the accident: "We were going like hell. . . . We must have been going between 65 and 75 miles an hour. . . . We were seeing how fast we could go. . . . How could the other car get out of the way? We were going too fast." The fact that the Ford truck was shunted across the street, over the lawn and up against a dwelling-house gives credence to this admission of Jack Phillips. The defendants, however, are not complaining of the judgment against them. They have not appealed. ■ From the implied finding of the jury which necessarily follows the judgment in favor of the plaintiff this court must assume he is entitled to a substantial award of damages. However, in determining whether the judgment is grossly inadequate and whether the award is supported by the evidence, the foregoing facts may be considered by a trial court in passing on a motion for a new trial which is based upon the ground of the alleged

inadequacy of the verdict. In determining the adequacy of a judgment, an appellate court is confined to a more stringent rule.

■ A new trial may be granted under the provisions of section 657 of the Code of Civil Procedure when it appears that the verdict is not justified by the evidence either because it is excessive or grossly inadequate.

Formerly, the rule at common law did not authorize the granting of new trials in actions for personal injuries or torts on the ground of inadequacy of damages. It was argued that since the amount of damages is largely within the discretion of the jury in such cases where there is no standard of computation, there is then no accurate rule by which to measure the damages. The discretion of the jury may therefore not be interfered with.

In England and in the United States that rule has been greatly relaxed. The principle is now uniformly recognized that there is no greater reason for granting a new trial on the ground that a verdict is excessive than that it is inadequate. In either event it is erroneous because it does not represent just compensation for the injuries sustained.

■ While a court may not set aside a verdict and grant a new trial merely because the judge does not agree with the amount of the award of damages, where it is so grossly inadequate or excessive as to leave no reasonable doubt that the verdict is the result of passion or prejudice or that it is contrary to the evidence and constitutes a clear abuse of the discretion of the jury, a new trial should be granted for the reason that the award of damages is not justified by the evidence and does not reasonably compensate for the injuries sustained. (*Taylor* v. *Northern Elec. Ry. Co.*, 26 Cal. App. 765 [148 Pac. 543]; *Donnatin* v. *Union H. & M. Co.*, 38 Cal. App. 8 [175 Pac. 26]; 20 Cal. Jur. 104, sec. 67; 20 R. C. L. 283, sec. 67; 46 C. J. 207, sec. 152; 1 Hayne on New Trial, 455, sec. 95.) ■ The province of the jury to determine the amount of damages to be awarded as compensation for personal injuries should, however, not be interfered with unless it clearly appears their discretion has been abused. It is difficult to determine just what state of facts will warrant a trial court in setting aside the verdict of a jury on the ground that the award is inadequate or what record will justify an appellate court in reversing a judg-

ment on that ground. Where property values are involved
it is not difficult to ascertain the approximate measure of
damage. But who can accurately estimate the pecuniary
damage resulting from the loss of a member of the body or
an injury to some vital organ? In the Taylor case, *supra,*
where it appears the plaintiff sustained a serious injury to
the spine and paralysis resulted therefrom, the trial court
set aside a verdict of $500 as inadequate. On appeal the
order granting the new trial was affirmed. We are cited
to no authority, however, wherein a verdict for $3,000 as
damages for injuries similar to those which were sustained
in the present case, was set aside as inadequate.

■ There is evidence in this case to indicate that Jack
Phillips was seriously and possibly permanently injured.
Both bones of the right forearm near the wrist were broken.
The twelfth vertebra of the spinal column was fractured.
This caused a lateral curvature of the spine. The periphery
process of the vertebra was also injured. He received a
severe contusion on the back of his head. He suffered great
pain and shock to the nervous system. He was delirious for
several days. He was confined to the hospital several months
and was kept in a plaster-cast jacket for five months. There
is evidence from which the jury may have assumed the in-
juries to his arm and spine may leave permanent damaging
results, and that a future operation may become necessary
to adjust the curvature of the spine and relieve the patient
of pain. The doctor testified regarding the broken arm:
"The bone on the outside of the arm . . . shows a deformity
of this ulna, an angulation . . . (of) about two centimeters.
. . . Although he has got pretty good motion in the wrist—
very good function— . . . he has not as much as he had
before."

Regarding the fracture of the vertebra which left a slight
curvature of the spine and a nervous condition, he said: "He
has certainly suffered nervous shock, just how permanent it
will be, I do not know. . . . Q. If the pain does not leave,
doctor, is it customary to perform an operation in that
region? A. Yes. If after the brace is removed and he still
has pain in his spine, it will be necessary . . . to take a graft
from the leg and put into the spine in order to keep that
portion of the vertebra in that region from moving. . . .
Q. Have you any proximate idea of the reasonable cost of

what such an operation would be? . . . A. Oh, I imagine a thousand dollars would be a fair fee." This is the only evidence regarding the cost of a possible necessary future operation. The necessity of such an operation is conditional and uncertain.

Where property of an undisputed pecuniary value is damaged by the ascertained tort of an individual, it is easy to determine whether a judgment is adequate or not. Where a plaintiff has been awarded a judgment which clearly entitles him to a substantial amount of damages, and the jury renders a verdict for a mere nominal sum, the inadequacy is apparent. Many authorities uphold a remedy under such circumstances. The judgment in the present case is not for a mere nominal sum. It greatly exceeds an award which might be so termed. From the very necessity and uncertainties of the situation a jury is accorded a wide latitude and an elastic discretion in assessing damages as compensation for personal injuries. We know of no equitable or accurate means of measuring the damages under such circumstances except to rely upon the sound judgment of the jurors. Under the facts of this case we are unable to say as a matter of law that the judgment is inadequate or that the award is so grossly insufficient as to lack support of the evidence and require a reversal on that account.

There was no error in failing to render or enter the judgment against the individual members of the defendant copartnership. It is a partnership liability for the tort of an agent and employee within the scope of his employment which binds the partnership and the members thereof jointly. (20 Cal. Jur. 740, sec. 55; 20 R. C. L. 914, sec. 126; 47 C. J. 884, sec. 364.) Each of the partners is individually liable for the payment of the debt. (20 Cal. Jur. 849, sec. 140.) In 1 Rowley's Modern Law of Partnership, 639, section 504, it is said: "Partnerships and partners are bound and liable for the tortious acts of their agents or servants acting within the scope of their agency or employment as well as for the acts of each partner acting within the scope of the firm's business."

The judgment is affirmed.